**DETROIT ZOOLOGICAL SOCIETY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 85–2–00275.**

United States Court of International Trade.

Feb. 28, 1986.

---

Edmund Maciorowski, Detroit, Mich., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Jerry

**1353**

P. Wiskin and Judith M. Barzilay, Civil Div., U.S. Dept. of Justice, New York City, for defendant.

## OPINION AND ORDER

RESTANI, Judge:

Plaintiff, the Detroit Zoological Society, is the consignee of five entries made between November 21, 1983, and March 12, 1984.[1] Plaintiff sought to have the imported merchandise classified under a duty free item, TSUS 862.10: "Articles imported for exhibition by any institution or society established for the encouragement of ... education or science...." The United States Customs Service (Customs), however, classified the entries under TSUS items 690.05, 690.15 and 806.20 and required the deposit of duties in accordance with the rates applicable to those items. See 19 U.S.C. § 1505(a) (1982 & West Supp.1985) (requiring deposit of estimated duties at the time of entry). Plaintiff filed a protest concerning classification of the first entry on February 18, 1985,[2] and filed another protest on February 25, 1985, covering the second through fourth entries.[3] The following day, plaintiff filed a complaint with this court, asserting jurisdiction under 28 U.S.C. §§ 1581(i), 1585 and 2202, seeking to have all five entries deemed liquidated by operation of law under 19 U.S.C. § 1504(a).[4] Subsequently, plaintiff filed a protest, dated May 14, 1985, covering the last of the five entries.[5] Plaintiff now seeks to amend its complaint to include an assertion of jurisdiction under 28 U.S.C. § 1581(a) (1982). This matter is before the court on plaintiff's motion to amend its complaint and on defendant's motion to dismiss for lack of subject matter jurisdiction.[6]

Section 1581(a) provides the Court of International Trade with "exclusive jurisdiction of any civil action commenced to

1. The entries consisted of a locomotive and coaches for plaintiff's "zoo train." It is not disputed that the entry numbers and dates of entry are as follows:

| Entry No. | Date of Entry |
| --- | --- |
| 345803 | 10/21/83 |
| 336957 | 11/29/83 |
| 338023 | 01/06/84 |
| 339266 | 02/16/84 |
| 340029 | 03/12/84 |

2. Protest No. 3801–5–000967.

3. Protest No. 3801–5–001358.

4. 19 U.S.C. § 1504(a) provides:

(a) Liquidation

Except as provided in subsection (b) of this section [applying to extension of liquidation,] an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise;

* * * * * *

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer, his consignee, or agent....

19 U.S.C. § 1504(a) (1982).

The court notes that 19 U.S.C. § 1504 has been modified by public law 98–573, § 191(d)(1) (1984). The amendments only apply to entries made on or after the 15th day after October 30, 1984, Pub.L. No. 98–573, § 195(a) (1984), and thus they are not applicable to the case at bar.

Citations to § 1504 will, therefore, unless otherwise indicated, refer to the 1982 Code.

5. Protest No. 3801–5–001907.

6. As a preliminary matter, the court observes that § 1581(i) is the residual jurisdiction of this court. United States v. Uniroyal, Inc., 69 CCPA 179, 182–83, 687 F.2d 467, 471–72 (1982); Ass'n of Food Indus., Inc. v. von Raab, 9 CIT ——, 624 F.Supp. 1557, 1558 (1985); Vivitar Corp. v. United States, 7 CIT ——, 585 F.Supp. 1419, 1424–25 (1984); aff'd, 761 F.2d 1552, 1559 (Fed.Cir. 1985). As such, it may only be invoked when other available avenues of jurisdiction are "manifestly inadequate or necessary because of special circumstances to avoid extraordinary and unjustified delays caused by the exhaustion of administrative remedies." Manufacture de Machines du Haut-Rhin v. von Raab, 6 CIT ——, 569 F.Supp. 877, 882–83 (1983) (citing Lowa, Ltd. v. United States, 5 CIT 81, 561 F.Supp. 441 (1983), aff'd 724 F.2d 121 (Fed.Cir.1984); United States Cane Sugar Refiners' Ass'n v. Block, 69 CCPA 172, 683 F.2d 399 (1982)). Accord American Ass'n of Exporters and Importers—Textile and Apparel Group v. United States, 751 F.2d 1239, 1246 (Fed.Cir.1985); Uniroyal, 69 CCPA at 187, 687 F.2d at 475 (Nies, J., concurring); Vivitar, 7 CIT at ——, 585 F.Supp. at 1425. Consequently, the potential jurisdiction of this court under § 1581(a) must be considered prior to addressing the claim of § 1581(i) jurisdiction, despite the fact that plaintiff raises these alternative jurisdictional bases in the reverse order.

contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930. [19 U.S.C. § 1515]." 28 U.S.C. § 1581(a) (1982). The prerequisites of section 1581(a) jurisdiction are that a protest has been filed as to protestable subject matter; that the protest has been denied; and that the protest was timely filed. The court will examine each of these requirements in turn to determine whether section 1581(a) jurisdiction is appropriate in the case at bar. A protest may be filed to contest, among other things, "the classification and rate and amount of duties chargeable," 19 U.S.C. § 1514(a)(2) (1982), or "the liquidation . . . of an entry. . . ." 19 U.S.C. § 1514(a)(5) (1982). Thus, it is evident that plaintiff's dispute as to the alleged deemed liquidation, classification and duties to be paid on its entries is protestable subject matter under section 1514(a).

The parties agree that plaintiff's first protest was denied on May 15, 1985, and there has been no allegation that either of plaintiff's other two protests were denied earlier than that date. Plaintiff, however, filed its complaint on February 26, 1985. Thus, plaintiff's complaint preceded the denial of any of its protests. This failure to exhaust the requisite administrative review process of protest *and* denial of protest before filing the complaint would have prevented this court from invoking section 1581(a) jurisdiction when the complaint was filed. *See Wear Me Apparel Corp. v. United States,* 1 CIT 194, 195, 511 F.Supp. 814, 816 (1981) (denial of protest as prerequisite to invoking section 1581(a) jurisdiction) (citing *United States v. Reliable Chemical Co.,* 66 CCPA 123, C.A.D. 1232, 605 F.2d 1179 (1979) (denial of protest as jurisdictional prerequisite under predecessor to section 1581(a)); H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 44, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3729, 3755 (indicating intent in enacting the Customs Courts Act of 1980 to preserve requirement of protest and denial as prerequisites to jurisdiction under section 1581(a))). Plaintiff claims in its motion for leave to file an amended complaint, however, that its protests covering each of the

entries have been denied or will be denied during the course of this litigation, thus conferring section 1581(a) jurisdiction on this court.

■ A party may file a supplemental complaint to cure a jurisdictional defect of failure to exhaust administrative remedies if the requisite actions are taken after filing a complaint. *See Mathews v. Diaz,* 426 U.S. 67, 75, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976) (jurisdictional prerequisite under Social Security Act of filing application for enrollment was satisfied by supplemental pleadings establishing that application was filed after plaintiff was joined in action); *Wear Me Apparel,* 1 CIT at 197, 511 F.Supp. at 817 (leave to file an amended complaint under section 1581(a) granted where protest denied after complaint was filed). Although plaintiff did file an amended complaint after two of the three protests were denied, leave to amend is appropriate here only if the amended complaint cures the jurisdictional defect. Thus, the court must determine whether the final jurisdictional requirement of section 1581(a), that the protests themselves be timely filed, has been satisfied.

■ The time frame for filing a protest under 19 U.S.C. § 1514(a) is specifically provided for by statute:

(2) A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with such customs officer within ninety days after but not before—

(A) *notice of liquidation* or reliquidation, or

(B) in circumstances where subparagraph (A) is inapplicable, *the date of the decision as to which protest is made.*

19 U.S.C. § 1514(c)(2) (1982) (emphasis added).

Although 19 U.S.C. § 1504(a) (1982) specifically states that notice of a deemed liquidation need not be provided, the implementing regulations require that Customs provide such notice. 19 C.F.R. § 159.9(c)(2)(ii) (1984). Regardless of this apparent incon-

sistency, where Customs contends, as here, that entries are not deemed liquidated, notice obviously would not be provided. In this case it is appropriate to allow a protest as to the alleged deemed liquidation to be filed within the time frame of section 1514(c)(2)(B) (above), prior to notice of liquidation.[7] The propriety of this ruling is made clear by the legislative history of liquidation by operation of law. Congress noted that "[u]nder the present law, [prior to enactment of the deemed liquidation provision,] an importer may learn years after goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due but be unable to recover the excess for years as he awaits liquidation." S.Rep. No. 95–778, 95th Cong., 2d Sess. 32, *reprinted in* 1978 U.S. Code Cong. & Ad.News 2211, 2243. Congress sought to alleviate this problem by providing for liquidation by operation of

law. To require a party to await notice of liquidation before filing a protest as to an alleged deemed liquidation would frustrate the legislative intent here, which was to prevent a party from bearing the burden of an inordinate delay in the liquidation of an entry. Thus the question is whether plaintiffs' protests were timely filed in accordance with section 1514(c)(2)(B).[8]

Defendant argues that the liquidation of the entries in question was extended and that, as a result, plaintiff's protests were filed prior to liquidation of each respective entry. From this, defendant concludes that plaintiff's protests were not timely filed and, as such, the denial of those protests does not provide the basis for section 1581(a) jurisdiction.

Plaintiff filed each protest more than a year after each respective entry, after what it alleges was deemed liquidation of the entries.[9] Even so, only if the alleged

---

**7.** This is not to say that a party would be time barred from filing a protest if it chose to file its protest after notice of liquidation. *See Pagoda,* 9 CIT ——, 617 F.Supp. 96, 97, *appeal docketed,* No. 86–750, (Fed.Cir. Dec. 18, 1985) (protest related to alleged deemed liquidation filed within 90 days after notice of liquidation); T.D. 79–221, 44 Fed.Reg. 46,794, 46,809, 13 Cust.Bull. 641, 684–85 (1979) (Customs' explanation that an importer has "two time frames" for protesting a deemed liquidation: 90 days after either deemed liquidation or notice of deemed liquidation).

**8.** Here, "the decision as to which protest is made," 19 U.S.C. § 1514(c)(2)(B) (1982) (above), is the liquidation, allegedly by operation of law, of the entries in question. As noted, protest must be made "within ninety days after *but not before*" this decision. *Id.* (emphasis added). Thus, only if the entries were in fact deemed liquidated by operation of law could plaintiff's protests have been timely filed under § 1514(c)(2)(B).

**9.** Although an entry liquidated by operation of law is "deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer, his consignee, or agent . . .," 19 U.S.C. § 1504(a) (1982), this does not eliminate the possibility that this rate of duty and amount of duties will be contested through protest. For, as plaintiff seems to acknowledge, the rate of duty corresponding to the classification asserted "at the time of

entry" is that which is on the entry summary accepted by Customs and contains *not* what the importer, his consignee, or agent necessarily desires but rather what Customs insists upon as a condition precedent to release of the merchandise. *See* T.D. 79–221, 44 Fed.Reg. 46,794, 46,829, 13 Cust.Bull. 641, 685 (1979). Thus, the importer, his consignee or other eligible person may wish to file a protest as to the rate of duty at which the entry is deemed liquidated. An alternative view would interpret § 1504(a) to effect deemed liquidation at that classification under which the importer, his consignee, or agent attempted to enter the merchandise. This would, in effect, operate as a substantive penalty on Customs for its failure to liquidate merchandise within a year of entry, rather than simply avoiding undue delays in a party's ability to challenge a liquidation. *See supra* discussion of 19 U.S.C. § 1514(c) (court's indication that deemed liquidation or notice of liquidation is prerequisite to filing protest of classification and rate and amount of duties chargeable or of liquidation of an entry); see discussion in Shayne, *Deemed Liquidated,* American Import-Export Bulletin, July 1979 at 37–40. As was discussed, *supra,* the legislative history of deemed liquidation clearly indicates that liquidation by operation of law is designed to expedite the process of liquidation. The court is not convinced, however, that Congress sought to impose a harsh penalty on Customs for a failure to timely liquidate an entry. Thus, in this opinion the court is not disposing of plaintiff's claim on the merits. Rather, the court is only addressing the time for filing a protest.

extensions of liquidation were invalid could the protests have been filed within the requisite time frame of section 1514(c)(2)(B). *See supra* footnote 8. Whether the protests were timely filed, and thus whether this court has jurisdiction under 28 U.S.C. § 1581(a), therefore turns on the validity of the alleged extensions of liquidation. *See Computime v. United States,* 772 F.2d 874, 875 (Fed.Cir.1985); *ITT Semiconductors v. United States,* 6 CIT ——, 576 F.Supp. 641, 643 (1983) (both indicating that denial of a timely filed protest is a prerequisite to section 1581(a) jurisdiction).

■■■■■ Plaintiff challenges the validity of the extensions of liquidation on two distinct grounds. First, plaintiff argues that the Customs Service had all the information required to complete the liquidations and therefore Customs was not justified in issuing extensions of liquidation under 19 U.S.C. § 1504(b) (1982). Second, plaintiff contends that notice of the extensions was not provided to plaintiff-consignee and therefore the extensions did not take effect. As to plaintiff's first contention, defendant responds that Customs required additional information to process the classifications. In addition, defendant claims that plaintiff's request that Customs seek internal advice on the classifications constituted an implicit request that liquidation be delayed pending receipt of the advice from Customs Headquarters.[10] Finally, defendant argues that its decision to extend liquidation is not reviewable by this court because there is allegedly no law to apply. At the outset, it must be noted that this court does in fact have limited authority to review Customs' decision to extend the period in which to liquidate entries. There are specific circumstances under which Customs may issue such extensions.[11] Customs must interpret the statutes which it administers reasonably, *Zenith Radio Corp. v. United States,* 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978), and its decisions are "subject to judicial review for arbitrariness and abuse of discretion, even though the discretion may be broad." *Bar Bea Truck Leasing Co. v. United States,* 4 CIT 138, 140 (1982) (quoting *Peoples v. United States Dept. of Agriculture,* 427 F.2d 561, 567 (D.C.Cir.1970)); *see Pagoda,* 9 CIT at ——, 617 F.Supp. at 99–100 (finding no valid ground for extension or suspension). Both grounds asserted by defendant as justifying the extensions—the need to obtain information and a request by a party for an extension—are specifically provided for by statute. 19 U.S.C. § 1504(b)(1), (3) (1982). The notices of extension here, however, mentioned only the need to obtain information as justification for the extensions. Customs is required to specify its reasons for granting an extension in each notice of extension, 19 C.F.R. § 159.12(b) (1984), and the court will, therefore, analyze the alleged extensions solely in light of the reason stated in the notices.[12] The court does not doubt, as plaintiff claims, that plaintiff provided Customs with information regarding the classifications. The term "information," as it is used in the statute, 19 U.S.C. § 1504(b)(1) (1982), however, should be construed to include whatever is reasonably necessary for proper appraisement or classification of the merchandise involved. When a request for internal advice of a classification deci-

---

**10.** The procedures for internal advice requests are set forth in 19 C.F.R. § 177.11.

**11.** The circumstances justifying an extension of liquidation are set forth in 19 U.S.C. § 1504(b) (1982) which provides:

**(b) Extension**

The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer, his consignee, or agent in such form and manner as the Secretary shall prescribe in regulations, if—

(1) *information needed for the proper* appraisement or *classification of the merchan-*

*dise is not available to the appropriate customs officer;*

(2) liquidation is suspended as required by statute or court order; or

(3) *the importer, consignee, or his agent requests such extension and shows good cause therefor.*

(emphasis added).

**12.** Thus, the court need not determine whether a request for internal advice is tantamount to a request for an extension of liquidation.

sion is granted, the "information" required to make the appropriate classification includes that advice. An extension of liquidation is thus justified in such a case if additional time is needed to obtain the internal advice and to consider it before making the classification decision.

 The statute imposes a four year outside limit on extensions of liquidation, 19 U.S.C. § 1504(d) (1982), and the regulations state that each individual extension is not to exceed one year. 19 C.F.R. § 159.-12(a)(1) (1984). Nonetheless, the court must conclude that it was intended that an extension be granted only for a reasonable period of time relative to the situation. The request for internal advice was made on May 21, 1984, providing Customs with between approximately five months and ten months before the anniversary dates of the various entries and between approximately eight months and twelve months before the respective protests were filed. These time periods in and of themselves cannot be said to be unreasonable. Ordinarily, the court should defer to Customs' determination that it needs additional information to liquidate an entry and therefore requires an extension of the statutory time period. As stated by the Temporary Emergency Court of Appeals, "deference to an agency's judgment is especially appropriate when the issue is the ability of that same agency to perform certain tasks." *Basin, Inc. v. Federal Energy Administration,* 552 F.2d 931, 937 (Temp.Emer.Ct.App.1977) (review of Federal Energy Administration regulation freezing supplier-purchaser relations pursuant to the Emergency Petroleum Allocation Act). Although it is unclear how long an extension would be reasonable, the court cannot conclude, based on the facts before it, that at the time the protests were filed the delay had been so great as to constitute an abuse of discretion, thereby invalidating the extensions.[13]

As noted, plaintiff also claims that even if extensions were justified, the failure to provide notice of any such extensions to plaintiff-consignee determines that the alleged extensions were invalid and, as a result, the entries were liquidated by operation of law. The statute specifies that the period in which to liquidate an entry may be extended *"by providing notice* of such extension to the importer, his consignee, *or* agent in such form and manner as the Secretary shall prescribe in regulations...." 19 U.S.C. § 1504(b) (1982) (emphasis added). The implementing regulations state that "[i]f the district director extends the time for liquidation, ... he promptly shall notify the importer *or* the consignee *and* his agent *and* surety...." 19 C.F.R. § 159.12(b) (1984) (emphasis added). Here, although notices were apparently provided to the importer of record and to the surety, no such notices were sent to plaintiff-consignee.[14]

Plaintiff claims that "importer of record" is a term of art in Customs usage and that an "importer of record" is not an "importer" within the meaning of the statute or regulations. Plaintiff further argues that Congress intended to have notice provided to the party incurring liability, whether it be the importer or consignee and that plaintiff-consignee was, therefore, entitled to notice of the alleged extensions. In support of the latter argument, plaintiff cites the legislative history to the deemed liquidation and notice provisions which states that these provisions "would increase certainty in the customs process for importers,

---

**13.** It appears that liquidation of the entries may not yet be completed. The legitimacy of the extensions must be judged as of the date the protests were filed, however, because the protests were timely filed only if the extensions were invalid as of the date of each respective filing. The court expresses no opinion as to the validity of any additional extensions that may have been granted beyond the initial one year period. Absent such additional valid extensions, deemed liquidation would appear to have occurred, a notice of liquidation should issue and protest would be appropriate.

**14.** Plaintiff denied knowledge of whether any notices of extension were provided as to three of the entries. An affidavit subsequently provided by defendant, however, indicates that the required notices of extension apparently were provided to the importer of record and to the surety.

surety companies, *and other third parties with a potential liability* relating to a customs transaction." S.Rep. No. 95–778 at 32, 1978 U.S.Code Cong. & Ad.News at 2243 (emphasis added). Thus, plaintiff concludes that even if notice was provided to the importer of record, this was insufficient to effect the alleged extensions.

■ Plaintiff's arguments here are unpersuasive. As noted, the statute requires that notice be provided to "the importer, his consignee, *or* agent...." 19 U.S.C. § 1504(b) (1982) (emphasis added). The listing of these parties in the alternative indicates that notice to any one will suffice.[15] Thus, under the literal words of the statute failure to give notice to plaintiff-consignee does not invalidate the extensions if one of the other two parties named in the statute is notified of the extensions. Plaintiff seems to acknowledge in its complaint that the importer of record here is an "agent" of plaintiff-consignee and in this case it appears that the importer of record was notified. Assuming that "agent" in the statute refers to "agent" of the "consignee," notice to the importer of record here meets the statutory requirement regardless of whether the importer of record is also the "importer."[16] On the other hand, even if "agent" means "agent" of the "importer" and not "agent" of the "consignee," the statute is satisfied. In the case at bar, "importer" can only mean "importer of record" or "consignee." Given the parties here, there are no other alternatives. By providing notice to the importer of record, either the "importer" was notified (if the importer of record is the "importer") or the "agent" of the "importer" was notified (if the consignee is the "importer"). Thus, under any construction of the statute, notice to the importer of record is sufficient to effect the extensions in this case.

■ Section 159.12(b) of the regulations (quoted above) would seem to require notices to the importer *or* consignee *and* to the agent *and* surety.[17] In this case, notification of the surety is not at issue. Therefore, the essential question is whether the regulation may properly require additional notice to the consignee as a condition precedent to a valid extension in a case where the importer of record/agent of the consignee is notified. The statute does provide that the Secretary of the Treasury shall specify the "form and manner" in which notice is to be given. 19 U.S.C. § 1504(b) (1982). That the Secretary is allowed to choose among various types of notice methods, however, does not mean that the Secretary may change the requirements for an extension from notice to *one* of three parties into notice to *each* of three parties. The Secretary may provide that notice is to be given to both the importer of record and the consignee, where these are two separate parties, as a matter of convenience to the parties. Such a provision, however, cannot alter the statutory re-

---

**15.** Congress has amended § 1504(b) to specifically require that notice of extension be provided only to the importer of record. 19 U.S.C.A. § 1504(b) (West Supp.1985).

**16.** Although the parties have not provided any definitions of these terms, the implementing regulations indicate that an "importer of record" can be an "importer" within the meaning of the regulations. 19 C.F.R. § 101.1(k) defines "importer" as follows:

(k) *Importer.* "Importer" means the person primarily liable for the payment of any duties on the merchandise, *or an authorized agent acting on his behalf.* The importer may be:
 (1) *The consignee,* or
 (2) *The importer of record,* or
 (3) The actual owner of the merchandise, if an actual owner's declaration and superseding

bond has been filed in accordance with § 141.20 of this chapter, or
 (4) The transferee of the merchandise, if the right to withdraw merchandise in a bonded warehouse has been transferred in accordance with Subpart C of Part 144 of this chapter.
19 C.F.R. § 101.1(k) (1984) (emphasis added).

**17.** *See,* C.S.D. 83–20, 17 Cust.Bull. 754 (1982) (liability of surety discharged due to failure to provide it with notice of extension), *rev'd in part,* 17 Cust.Bull. No. 19 at 8 (1983). The validity of Customs' reversal of C.S.D. 83–20 is currently being challenged in this court. *Old Republic Insurance Co. v. United States,* Court No. 83–10–01450. Because these decisions relate to surety liability only, they do not determine the outcome of this case.

quirements for effecting a valid extension.[18]

Furthermore, the court's decision is in accord with the legislative history of 19 U.S.C. § 1504 (quoted above). The deemed liquidation statute does indeed increase "certainty in the customs process" for parties with potential liability by limiting the time for liquidation. Of course, a specific notice requirement for all concerned parties would further increase certainty, but that is not necessarily required by the legislative history. The court also notes that a contractual agreement between the importer of record and the ultimate consignee would help to insure that whatever notices are required by statute or regulation would be passed on to the party not required to be notified. Based on the evidence produced to date, indicating that the proper parties were notified of the original extensions, the court must conclude that the protests were not timely filed and that the denial of these protests does not, therefore, provide this court with the basis for section 1581(a) jurisdiction. *See Computime v. United States*, 772 F.2d 874, 875 (Fed.Cir. 1985); *ITT Semiconductors v. United States*, 6 CIT ——, 576 F.Supp. 641, 643 (1983).

 As indicated, plaintiff also asserts jurisdiction under 28 U.S.C. § 1581(i) (1982). Although plaintiff contends that the Customs Service was not justified in granting extensions of liquidation, the delay in liquidation due to the extensions was not so great as to constitute the "special circumstances" necessary to invoke section 1581(i) jurisdiction in a case where section 1581(a) is available. *See supra* footnote 6. Plaintiff was required to deposit estimated duties and will not be able to obtain a refund, if at all, until it is determined that any such refund is appropriate, either through the administrative review process or through judicial review following liquidation, protest and denial of protest. This delay in obtaining a refund is a necessary consequence of the statutory scheme and any additional hardship imposed on plaintiff by the extensions is experienced by all importers or consignees required to deposit estimated duties for entries, the liquidation of which is extended. Thus, plaintiff here lacks justification to invoke section 1581(i) jurisdiction. *Compare United States Cane Sugar Refiners' Association v. Block*, 69 CCPA 172, 175 n. 5, 683 F.2d 399, 402 n. 5 (1982) (proceeding under section 1581(a) found "manifestly inadequate" where delay posed grave threat to the industry and the economy). To invoke section 1581(i) jurisdiction in the case at bar is inappropriate because to do so would "frustrate the orderly administration of the customs laws by permitting plaintiff to circumvent the usual and normal administrative review process." *Lowa Ltd. v. United States*, 5 CIT 81, 89, 561 F.Supp. 441, 447 (1983), *aff'd*, 724 F.2d 121 (Fed.Cir.1984).

 Finally, plaintiff also asserts jurisdiction under 28 U.S.C. §§ 1585 and 2201. It is clear, however, that neither of these provisions provides a basis of subject matter jurisdiction. *Manufacture De Machines Du Haut-Rhin v. von Raab*, 6 CIT ——, 569 F.Supp. 877, 881 (1983) (28 U.S.C. § 1585 does not grant jurisdiction to the Court of International Trade, rather confers ability to provide injunctive relief) (citing *Kidco, Inc. v. United States*, 4 CIT 103, 104 (1982)); *Smith v. Lehman*, 533 F.Supp. 1015, 1018 (E.D.N.Y.) (28 U.S.C. § 2202 is not jurisdictional but rather remedial), *aff'd*, 689 F.2d 342 (2d Cir.1982), *cert. denied*, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1018 (1983).

Thus far, plaintiff has failed to establish facts to support an appropriate basis of jurisdiction in either its original complaint or in the proposed amended complaint. As discussed, however, 28 U.S.C. § 1581(a), which is alleged in the proposed amended complaint, could provide a basis of jurisdiction if no extensions of liquidation had occurred when the protests were filed.

---

**18.** The court need not and does not reach the question of what the Secretary actually intended to require pursuant to 19 C.F.R. § 159.12(b).

On its face section 159.12(b) does not mesh easily with the definitional regulation, 19 C.F.R. § 101.1(k) (1984), or with the statute.

Because discovery was stayed pending consideration of this motion, plaintiff has not had an opportunity to discover facts relating to jurisdiction, which may be peculiarly within Customs' control. Nonetheless, some factual material has been turned over by the government. Furthermore, discovery related only to specific jurisdictional issues will be permitted at this time. The court is also aware that detailed examination of a Customs' extension decision based on the need for additional information could be useless and burdensome. (See previous discussion of agency's discretion in this area.) Of course, indications of bad faith on the part of Customs would be a reason to examine such a decision in some detail. Thus far, however, there are no such indications. Therefore, while to a limited degree the need for additional information may be an area of permissible discovery, this has not been shown to be a likely area of fruitful inquiry. The focus of plaintiff's discovery, if any questions remain unanswered, more likely should be whether or not the importer of record was sent the requisite notices.

Therefore, if plaintiff wishes to proceed with jurisdiction predicated on its original protests, and if it believes that discovery is necessary, it should advise the court of its specific and limited discovery plan within 10 days hereof. The government will have 5 days to respond to this plan, at which time the court will decide what discovery is appropriate. Failure to timely file a discovery plan will be deemed an admission that no jurisdictional facts remain to be discovered and this action will be dismissed for the reasons set forth above.